# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHEMRX PHARMACY SERVICES, LLC )<br><br>Plaintiff, )<br><br>v. )<br><br>MARY ELLEN CONVALESCENT HOME, INC., )<br><br>Defendant. ) | **Civil Action:** 1:11-cv-09042-GBD<br><br>**ECF CASE**<br><br>**COMPLAINT** |

Plaintiff, ChemRx Pharmacy Services, LLC f/k/a ChemRx Acquisition Sub, LLC, as

assignee of CRC PA, LLC f/k/a ChemRx/Salernos, LLC ("ChemRx"), for its Complaint against

Defendant, Mary Ellen Convalescent Home, Inc. ("Mary Ellen"), states as follows:

### NATURE OF THE ACTION

1.      This action arises out of Mary Ellen's failure to pay ChemRx for pharmacy

related goods and services provided by ChemRx to the residents of a skilled nursing facility in

Hellertown, Pennsylvania (the "Facility"), which is owned and operated by Mary Ellen.

### THE PARTIES

2.      ChemRx is a limited liability company organized in Delaware.  Its sole member,

Pharmacy Corporation of America, is a California corporation with a principal place of business

in Louisville, Kentucky.  ChemRx provides pharmacy related goods and services to residents of

long-term care and skilled nursing facilities.

3.      Upon information and belief, Mary Ellen is a Pennsylvania corporation with its

principal place of business in Hellertown, Pennsylvania.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

5.      The Court has personal jurisdiction over Mary Ellen because Mary Ellen consented to its jurisdiction in Paragraph 5.12 of the Agreement described below.

6.      Venue is proper in this Court because the parties consented to venue in this judicial district in Paragraph 5.12 of the Agreement described below.

## STATEMENT OF FACTS

7.      CRC PA, LLC f/k/a ChemRx/Salernos, LLC entered into an agreement with Mary Ellen to provide pharmacy related goods and services commencing in or around May 2008 (the "Agreement").  A redacted copy of the Agreement is attached as Exhibit A.[1]

8.      In or around September 2010, ChemRx purchased certain assets of CRC PA, LLC f/k/a ChemRx/Salernos, LLC.  In connection with that transaction, the Agreement was assigned to ChemRx.

9.      ChemRx performed all obligations required of it under the Agreement, as modified from time to time, including providing goods and services to Mary Ellen.  ChemRx submitted monthly invoices for the goods and services, and otherwise satisfied all conditions precedent to payment.

10.     Pursuant to the Agreement, Mary Ellen is obligated to pay for the goods and services provided by ChemRx.

---

[1] Due to confidentiality provisions, a redacted version of the Agreement has been attached hereto, but an unredacted version can be provided to the Court or to Mary Ellen upon request.

11.     Despite repeated demands for the sums due and owing under the Agreement, Mary Ellen has failed and refused to pay for goods and services provided by ChemRx.  The outstanding balance is accruing interest at one-and-a-half percent (1.5%) per month pursuant to Paragraph 3.4 of the Agreement.

12.     ChemRx conferred with Mary Ellen numerous times regarding the outstanding invoices and the amounts past due and made repeated demands for payment.

13.     During conferences between ChemRx and Mary Ellen, Mary Ellen represented to ChemRx that the outstanding invoices would be paid, and Mary Ellen requested that ChemRx continue to provide goods and services in accordance with the Agreement.

14.     ChemRx relied upon Mary Ellen's representations in continuing to provide goods and services.

15.     Despite ChemRx's billing, repeated demands for the sums due and owing, and conferences regarding amounts outstanding, Mary Ellen failed to pay for goods and services provided by ChemRx.

16.     Mary Ellen entered into the Agreement and modifications with ChemRx and induced ChemRx to continue to provide goods and services with no intent of paying outstanding invoices or otherwise performing as required under the Agreement.

17.     Upon information and belief, Mary Ellen has been reimbursed by Medicare for all or a significant portion of the goods and services provided by ChemRx, and has directly or indirectly benefited from such reimbursement.

## COUNT I – BREACH OF CONTRACT

18.     ChemRx incorporates by reference the allegations previously set forth in Paragraphs 1 through 17 of the Complaint.

3

19.     Mary Ellen entered into the Agreement with ChemRx, which provides that Mary Ellen is obligated to pay for the goods and services provided by ChemRx.

20.     Without legal justification or excuse, Mary Ellen materially breached the Agreement with ChemRx by failing to pay sums due and owing for the goods and services provided.

21.     As a direct and proximate result of Mary Ellen's breach of the Agreement, ChemRx has suffered damages in that it has not been paid for the goods and services it provided.

22.     Interest is accruing at 1.5% per month on the unpaid balance pursuant to Paragraph 3.4 of the Agreement.

23.     ChemRx is entitled to its attorneys' fees pursuant to Paragraph 3.4 of the Agreement.

## COUNT II – PROMISSORY ESTOPPEL

24.     ChemRx incorporates by reference the allegations previously set forth in Paragraphs 1 through 23 of the Complaint.

25.     Mary Ellen made promises to pay ChemRx for the purpose of inducing it to continue providing goods and services to Mary Ellen.

26.     ChemRx reasonably relied upon such promises made by Mary Ellen.

27.     Mary Ellen's promises and ChemRx's reliance thereon resulted in detriment and damages to ChemRx.

28.     ChemRx is entitled to recover damages in an amount to be proven at trial.

## COUNT III – UNJUST ENRICHMENT

29.     ChemRx incorporates by reference the allegations previously set forth in Paragraphs 1 through 28 of the Complaint.

30.     ChemRx has provided valuable goods and services to Mary Ellen for which it has not been paid.

31.     ChemRx's goods and services were rendered under circumstances pursuant to which Mary Ellen reasonably should have expected ChemRx would expect to be compensated.

32.     Mary Ellen has knowingly and willingly received, or will receive, reimbursement from Medicare as well as other benefits for the goods and services provided by ChemRx, and has wrongfully and intentionally withheld or will withhold such amounts from ChemRx.

33.     Consequently, Mary Ellen has been unjustly enriched through the receipt of such goods, services, and reimbursement at the expense of ChemRx, and ChemRx is entitled to recover from Mary Ellen for the goods and services provided.

34.     Furthermore, Mary Ellen has a legal and fiduciary duty to immediately remit proceeds received in reimbursements from Medicare to ChemRx if it has not timely paid invoices as required by the Agreement.

35.     For these reasons, a constructive trust should be imposed on any and all proceeds which have been, or hereafter are, received by Mary Ellen as reimbursement by Medicare for pharmacy related goods and services provided by ChemRx, plus interest, costs, and attorneys' fees.

## COUNT IV – ACCOUNT STATED

36.     ChemRx incorporates by reference the allegations previously set forth in Paragraphs 1 through 35 of the Complaint.

37.     Pursuant to the Agreement with ChemRx, Mary Ellen agreed to pay ChemRx for the goods and services it supplied to its facility.

5

38.     ChemRx delivered invoices for goods and services supplied by ChemRx to Mary Ellen.

39.     Mary Ellen did not object to or dispute such invoices.

40.     Mary Ellen without justification, excuse or dispute of such invoices, has not paid ChemRx the amounts invoiced.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, ChemRx requests judgment against Mary Ellen as follows:

A.  An award of damages in excess of $75,000.00 in an amount to be proven at trial;

B.  ChemRx's costs, expenses and attorneys' fees associated with prosecution of this action;

C.  The imposition of a constructive trust on sums received by Mary Ellen as Medicare reimbursement for pharmacy related goods and services provided by ChemRx and not paid for by Mary Ellen;

D.  Pre-judgment and post-judgment interest;

E.  All other relief to which ChemRx may be entitled.

Dated: December 5, 2011

Respectfully submitted

FULTZ MADDOX HOVIOUS & DICKENS PLC

Christine A. Sebourn (CS-8225)
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202
(502) 588-2000
Fax: (502) 588-2020
csebourn@fmhd.com

-and-

*Of counsel:*
FULTZ MADDOX HOVIOUS & DICKENS PLC
Benjamin C. Fultz
Chacey R. Ford
101 South Fifth Street, 27th Floor
Louisville, Kentucky 40202
(502) 588-2000
Fax: (502) 588-2020
bfultz@fmhd.com
cford@fmhd.com

7

# EXHIBIT A



**PHARMACY SERVICES AGREEMENT**

**PHARMACY SERVICES AGREEMENT**



2

# PHARMACY SERVICES AGREEMENT

This SERVICE AGREEMENT ("Agreement") is made and entered into as of the 23rd day of April, 2008, by and between ChemRx/Salernos, LLC P.O. Box 507, Sciota, PA 18354 and Mary Ellen Convalescent Home, a Pennsylvania corporation, solely in connection with the facility located at 1896 Leithsville Rd. Hellertown, Pa 18055 ("Facility"). Pharmacy services will commence on May _____, 2008.

## BACKGROUND

A.      ChemRx is qualified, licensed and capable of providing various products and services to skilled nursing and other health care facilities and their residents, including prescription and non-prescription medications, whether oral, IV, topical or other; durable and disposable medical supplies and equipment, and related services; intravenous therapy products and related services; and pharmacy consulting services.

B.      Facility desires to contract with ChemRx to provide the Pharmacy services described herein to residents at the Facility, and ChemRx agrees to provide such services, pursuant to the terms and conditions set forth herein.  In addition if initialed below, Facility agrees to contract for and ChemRx agrees to provide the following Services:
_____ Consultant Pharmacy Services (Exhibit "A")

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      Duties and Responsibilities of ChemRx.

1.1      Services.  ChemRx agrees to provide prescription and over-the-counter medications, whether oral, IV, topical or otherwise, and pharmacy supplies ("Services") to Facility as requested by Facility pursuant to the order of the resident's attending physician or for Facility's account.  Such Services will be packaged to meet the specifications of a medication distribution system mutually agreed upon by Facility and ChemRx (the "Distribution System"). ChemRx agrees to provide the Services in accordance with professional standards and all laws, rules and regulations that apply or relate to the performance of the Services.



3



4





3.4   _Payment Terms/Invoices_. Facility will pay for any Services obtained for its own account, or for any Services for which Facility is responsible for payment, within thirty (30) days of receipt of an invoice from ChemRx.  Any invoice not fully paid within thirty (30) days of receipt of an invoice from ChemRx will accrue interest at the rate of 1.5% per month, _provided_ that, in no event will interest be charged in excess of the amount permitted by applicable law.  Facility agrees to reimburse ChemRx for any and all costs incurred to collect payment from the Facility, including, without limitation, reasonable attorneys' fees.  Amounts due to ChemRx by Facility under these payment provisions are due in full regardless of the Facility's ability to bill or collect from another payment source, including but not limited to Medicare or Facility residents.  ChemRx reserves the right to provide Services on a C.O.D. basis should the Facility fail to keep payments current.

(a) The Facility will notify ChemRx, in writing, within thirty (30) days of the billing date of the ChemRx invoice indicating any amounts in dispute.  In the event of any dispute arising from any claim or bill submitted by ChemRx, ChemRx will have access to all reasonable and necessary documents and records that would, in the discretion of ChemRx, tend to sustain its claim. Further, where the Facility is an intermediary in the processing of claims, the Facility will promptly furnish to ChemRx any information regarding the status of the claim and will grant to any fiscal agency involved the right to discuss the status of the claim with ChemRx.



6



7



8



5.5     Confidentiality.  It is expressly understood that ChemRx may utilize
certain proprietary systems (electronic or manual), methods, procedures, written materials (such

as policy manuals) and other information developed by ChemRx ("Confidential Information"). Such Confidential Information will remain the property of ChemRx and Facility will not, at any time, unless prior written approval is obtained from ChemRx, utilize, distribute, copy, disclose to any third party or otherwise employ or acquire such Confidential Information except in the performance of Facility's obligations under this Agreement.  Facility also agrees that it will not disclose ChemRx's rates to any third party, except to the extent required by law.  Facility hereby acknowledges that if any breach of this section occurs, ChemRx would be irreparably and immediately harmed and could not be made whole by monetary damages.  Accordingly, in addition to any other remedy to which it may be entitled in law or in equity, ChemRx will be entitled to an injunction or injunctions to prevent breaches and/or to compel specific performance of this section, and Facility will not oppose the granting of such relief on the basis that monetary damages are adequate.  Facility also agrees to reimburse ChemRx for all costs and expenses, including reasonable attorney's fees, incurred by it in enforcing Facility's obligations under this section.



10



5.9      Successors and Assignment; Binding Effect.  This Agreement will be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  Nothing in this Agreement is intended nor will be deemed to confer any benefits on any third party.  Any sale, lease, assignment, delegation or transfer of all or any portion of the Facility's or ChemRx's management, operations, facilities, assets or business to any other person, corporation or entity, including any Facility management company, will not constitute grounds for the termination or modification of this Agreement by the Facility, Facility or ChemRx.



5.11     Governing Law.  This Agreement will be deemed to have been made in and its validity and interpretation will be governed by and construed under the laws of New York, without regard to the conflict-of law rules of New York and or any other state.

5.12.    Jurisdiction.  Any and all disputes arising under or related to the Agreement will be subject exclusively to the jurisdiction of the appropriate state court in New York or federal court in the U.S. District Court of New York.

11



IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have duly executed this Agreement as of the day and year first written above.

CHEMRX:

By:

Name:

Title: _Director of Sales_

FACILITY:

By:

Name: _Stacey P. Kirk_

Title _R.N., N H A_

13

**CHEMRX PRICING SCHEDULE A**



14



**ChemRx**
**Clinical Education and Professional Services - Pricing Schedule B**



16

**ChemRx Equipment Schedule C**

**17**



**EXHIBIT "A"**
**PHARMACY CONSULTING SERVICES**

CHEMRX:

By: _____

Name: _____

Title: _Director of Sales_

OPERATOR:

By: _____

Name: _____

Title: _RN, NHA_